## The People of the State of Illinois ex rel., Alex Anderson, Appellee, v. County of Lee, Appellant.

### Gen. No. 6,164.

1. STATUTES, § 213*—*when construction of previous statutes controlling in construing re-enacted statute.* Where a statute which has not been judicially construed re-enacts previous statutes with slightly but not materially different provisions, the construction given by the courts to such previous statutes will control the construction of the re-enacting statute.

2. STATUTES, § 205*—*when presumed Legislature had in mind re-enacted statutes and construction placed thereon by courts.* Where a statute re-enacts previous statutes with slightly but not materially different provisions, which previous statutes have received judicial construction, it must be presumed that the Legislature, in passing the re-enacting statute, had in mind the previous statutes and the construction given by the courts to such statutes.

3. STATUTES, § 199*—*when words of statute will not be departed from.* Where a clause in a statute providing for the enforcement of a duty is clearly limited to the duty imposed in the same section, the courts are not at liberty so to extend the effect of such clause as to make it apply to the enforcement of a different duty imposed by a different section of the same act, for the enforcement of which different duty the section imposing it does not in terms provide, although it cannot be perceived why the Legislature limited the application of such clause.

4. ROADS AND BRIDGES, § 154*—*when county cannot be compelled under statute to aid in construction or repair of bridges.* Following the construction given by the courts to previous statutes re-enacted with slight but not materially different provisions, by Hurd's Rev. St., ch. 121, art. V, sec. 36, providing for the construction by counties of bridges on or near county lines, *held* that the statute contains no express provision for compelling a county to aid in the construction or repair of bridges not "across any stream which is

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The People v. County of Lee, 196 Ill. App. 452.

the boundary line between" counties, or "within eighty rods of such boundary line, and the cost of such bridge will equal or exceed $5,000, as to which class of bridges such statute expressly provides a method for compelling such aid.

5. Roads and bridges, § 154*—*when writ of mandamus erroneously granted to compel county to aid in construction of bridges.* In a petition for mandamus to compel a county to aid in the construction of bridges on or near county lines under Hurd's Rev. St., ch. 121, art. V, sec. 36, providing that "bridges over streams which divide counties, and bridges on roads on county lines, and bridges within eighty rods of county lines, shall be built and repaired at the expense of such counties," but providing no method for the enforcement of such duty except as to bridges "across any stream which is the boundary line between" counties or "within eighty rods of such boundary line, and the cost of such bridge will equal or exceed $5,000," *held* that the writ was erroneously granted as to seven of such bridges, and that the writ was properly denied as to two bridges.

Appeal from the Circuit Court of Lee county; the Hon. Oscar E. Heard, Judge, presiding. Heard in this court at the October term, 1915. Reversed in part and affirmed in part. Opinion filed December 8, 1915.

Harry Edwards, for appellant.

William J. Emerson, for appellee.

Mr. Justice Carnes delivered the opinion of the court.

This is a mandamus proceeding begun in the Circuit Court of Lee county, by a resident landowner and taxpayer of Ogle county to compel the county of Lee to aid in rebuilding certain bridges on public highways on the county line between Ogle and Lee counties, and on highways within eighty rods of said county line. There was a trial before the court on stipulated facts which left the decision to depend entirely on the construction of section 36 of article V of our Roads and Bridges Act. of 1913 (chapter 121, Hurd's Rev. Stat.). The first sentence of said section directs that three classes of bridges (1) over streams which divide counties (2) on roads on county lines (3) within eighty rods of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

county lines "shall be built and repaired at the expense of such counties." The next two sentences direct that bridges of class (1) and (3) when the cost of construction shall be $5,000, or over, shall be built by such counties in the proportion indicated, and when one county, desiring to construct such bridge, has appropriated its share of the cost of constructing the same, the other county shall make an appropriation for its share of the cost, and if it fails to do so, any court of competent jurisdiction shall issue an order compelling it to make such appropriation. Further provided as to bridges in class (3) that cost less than $5,000 that the .expense of building and maintaining shall be borne by both counties in the proportion to be fixed as there indicated, but no provision as to enforcing that liability. The section reads as follows: "Bridges over streams which divide counties, and bridges on roads on county lines, and bridges within eighty rods of county lines, shall be built and repaired at the expense of such counties. And all such bridges over streams which form the boundary line between two counties, and all such bridges within eighty rods of such boundary line, when the cost of constructing the same shall be $5,000 or over, shall be built by such counties respectively in the proportion that the taxable property in each county respectively bears to each other according to its assessed value as equalized at the time of constructing such bridge. And when any county desires to build any such bridge across any stream which is the boundary line between such county and another county, or desires to build any such bridge within eighty rods of such boundary line, and the cost of such bridge will equal or exceed $5,000, and the county desiring to construct such bridge has appropriated its share of the cost of constructing the same, then it shall be the duty of such other county to make an appropriation for its proportion of the cost of said bridge on the basis of the assessed value of the property, real and personal,

of each of said counties according to the last preceding assessment thereof as equalized, and if such other county fails or refuses to make an appropriation for its proper portion of the cost of constructing such bridge, any court of competent jurisdiction shall issue an order to compel such county to make such appropriation upon a proper petition for that purpose, and the cost and expense of maintaining and keeping the same in repair after the same is built and constructed shall be borne in the proportion of the assessed value of the property in each of said counties according to the latest equalized assessment thereof: *Provided,* that for the building and maintaining of bridges over streams near county lines in which both are interested and where the cost thereof is less than $5,000, the expense of building and maintaining any such bridge shall be borne by both counties in such portion as shall be just and equitable between the counties, taking into consideration the taxable property in each, the location of the bridge, and the advantage of each, to be determined by the commissioner in making contracts for the same, as provided for in section 37 of this act."

None of the bridges in question are of class (1). Seven of the nine are of class (2) and are located on the county line road running east and west between the two counties. The other two bridges are of class (3) located within eighty rods of the county line. These nine bridges were so worn and decayed that new bridges in their places were necessary and the cost of building the seven bridges on the county line would be from $185, the least expensive, to $1,230, the most expensive, and to build the two bridges near the county line would cost $700 and $1,330, respectively. It was stipulated that if said bridges are required to be built by said counties, each should pay one-half the cost thereof, and further stipulated that no contract had ever been entered into between said counties to build, repair or maintain any of said bridges, and that both

of said counties are under Township Organization. The stipulation covered other facts not necessary to be here noticed. The court granted the prayer of the petition as to the seven bridges on the county line road, and denied it as to the two bridges within eighty rods of the county line. By appropriate assignment of errors and cross-errors such action of the court is here presented for review. Counsel say there is no reported judicial construction of this statute, and we know of none. There was a similar provision in the Revised Statutes of 1874, sec. 107, p. 930, reading as follows: "Bridges over streams which divide towns or counties and bridges over streams on roads on county or town lines, shall be built and repaired at the equal expense of such towns or counties: *Provided,* that for the building and maintaining of bridges over streams near county or town lines, in which both are equally interested, the expense of building and maintaining any such bridges shall be borne equally by both counties or towns."

This provision was construed by the Supreme Court in *Com'rs of Highways v. Com'rs of Highways,* 100 Ill. 631, and it was said that the provision considered alone seemed to impose a liability, but it was pointed out that the two succeeding sections (108 and 109) provided for the making of joint contracts by the commissioners of the adjoining towns or counties, and for the enforcement of such contracts when made, and that section 107 contained no provision whereby one town could compel another to erect or repair a bridge on a town line; therefore it was held that the clause in section 107 was intended to apply only to cases where contracts had been made as provided in the following sections. The court observed, in discussing the statute then in force, that great injustice might result in not observing the modification of this clause; that a densely populated township on one side of a stream might bankrupt an adjoining township of few

inhabitants on the other side of the stream by requiring an equal contribution to the building of such bridge. The question again arose in *People v. Com'rs of Highways,* 158 Ill. 197, and two sections of the then existing Road and Bridge law were quoted and discussed and it appears that the first section had been changed, perhaps to meet the suggestion of injustice, by omitting the words "equal" and "equally," leaving the obligation to repair or build bridges on county line roads and bridges on streams which divide county lines the same, except it was to be at the expense of the adjoining municipalities without stating in what proportion, and for the building and maintaining of bridges near county lines it was provided that the expense should be just and equitable, taking into consideration the taxable property of each, the location of the bridge, and the advantage. The statute there recited contained provisions as to the making and enforcing of joint contracts for building such bridges, and the court held that the liability apparently imposed could not be enforced in the absence of contract, but found there was a contract that should be enforced.

The slightly varying imperative provisions under consideration in the two above cited cases do not materially differ from the apparently imperative provisions in the present act, and unless there has been some material change in the following provisions, those two cases control, and one county cannot compel another to contribute to the building of a bridge. Under the former statutes it was held, as we have seen, that while the obligation to build and repair bridges was in the first clause clearly imposed on adjoining counties and towns, still because the Legislature in that section of the statute had not provided any way of enforcing the imposed duty but in the succeeding two sections had provided that it should be arranged by contract between the authorities, that the duty could not be enforced in the absence of a contract. It is

to be presumed that the Legislature had these former statutes and their construction by the Supreme Court in mind when it passed the present statute. It left entirely the same clause (omitting towns) requiring adjoining counties to build the three classes of bridges mentioned, and met the suggestion that no way was provided in that section for enforcing the duty by providing a way as to a part, but not all of the bridges falling within the designation in the first clause, and left the succeeding sections with practically the same force and effect bearing on the construction of the first clause as in the former statutes. Counsel suggest, in substance, that the Legislature must have intended that this first clause should be enforced by mandamus; that there is no good reason why it should impose the duty as to all bridges and then limit the right of enforcement to a part of the bridges. But if the right to enforce the first provision of the statute requiring counties to join in the building of all bridges of a certain description must depend upon a clause in that section providing for the enforcement of the duty, then it seems to us we must look at the clause claimed to have that effect, and if it is clearly limited to a part only of the bridges first designated, the court is not at liberty to extend its effect to all of the bridges, even though it cannot be perceived why the Legislature limited it to a part of them. The present act makes one such change by expressly providing for compelling a county to aid in building a bridge on a stream which is the boundary line, or within eighty rods of such boundary line, if the cost of such bridge will equal or exceed $5,000; but the first seven bridges here in question were neither on such a stream nor was the cost of any of them $5,000, and if we read "within eighty rods of such boundary line" as meaning within eighty rods of the county line, still the two other bridges are excluded because neither of them were to cost $5,000. Therefore, there

is no express provision in the present statute for compelling the county of Lee to aid in building any of these nine bridges. But there is a proviso as to bridges over streams near county lines that cost less than $5,-000. Assuming "near" is to be read "within eighty rods," we have a description of the last two bridges in question here, and it is imperatively said that the cost shall be borne by both counties in practically the same language as to proportionment found in the statute under discussion in the *People v. Com'rs of Highways, supra.* But there is no direction as to enforcing the duty, and the adjustment of the relative amounts to be paid is fixed by reference to a succeeding section, as it was in the former act.

We do not see that the statute admits of a different construction from that given former acts in the two cases above cited. We are therefore of the opinion that the court erred in granting the prayer of the petition as to the seven bridges on the county line road, and did not err in refusing to grant the prayer of the petition as to the two bridges within eighty rods of the county line. That part of the judgment granting the prayer of the petition as to the seven bridges on the county line is reversed, and the part denying the prayer of the petition as to the two bridges near the county line is affirmed.

*Reversed in part and affirmed in part.*